IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



FILED
SEP 2 5 2006
JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

| | |
|---|---|
| RICHARD MELAND,<br><br>    Plaintiff,<br><br>  v.<br><br>CITY OF CHICAGO; LEO PFEST, JR. #5971; RUSSEL A. EGAN #9227; ROBERT WEBER #373; ELIZABETH SALGADO-VALENTINI #471; T. MARTIN #422; and RICHARD A DEVINE, STATE'S ATTORNEY OF COOK COUNTY,<br><br>    Defendants. | Case No. 04 C 6622<br><br>Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Plaintiff Richard Meland (hereinafter, "Plaintiff") brings the instant action against Defendants Robert Weber (hereinafter, "Weber"), Elizabeth Salgado-Valentini (hereinafter, "Salgado-Valentini"), and T. Martin (hereinafter, "Martin")(hereinafter, collectively, "Defendants"), alleging that Defendants violated Plaintiff's Fourth Amendment rights under Section 1983 by illegally seizing Plaintiff's person, automobile, and property.

Defendants have moved for Summary Judgment on the only remaining count, which alleges illegal search and seizure under the Fourth Amendment. For the reasons stated herein, Defendants' motion is granted.

## I. **LEGAL STANDARD**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if it could affect the outcome of the suit under the governing law, and a dispute is genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view all the evidence and any reasonable inferences therefrom in the light most favorable to the non-moving party. *See Miller v. American Family Mutual Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000).

### A. **Plaintiff's Failure to Respond to Defendants' Rule 56.1 Statement**

In a motion for summary judgment, the burden initially rests upon the movant to identify portions of the pleadings, depositions, answer to interrogatories, admissions, and affadavits, if any, that the movant believes demonstrates absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 319 (1986). Once this burden has been met, the nonmovant must "set forth specific facts showing that there is a genuine issue of fact for trial," and may not rely merely upon allegations contained in their pleading. Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Associates, Inc.*, 914 F.2d 107, 110 (7th Cir. 1990).

Pursuant to Local Rule 56.1(a)(3) of the Local Rules of the United States District Court for the Northern District of Illinois, the movant must submit a statement of material facts in the form of short numbered paragraphs supported by specific references to the factual record. *See also Duncan v. Lamanna*, 2003 U.S. Dist. LEXIS 14134 at *3 (N.D. Ill.). In response, the nonmovant must submit a response to each such paragraph (including specific references to the factual record in the case of disagreement) in accordance with Local Rule 56.1(b)(3); *Wilcox*, 2002 U.S. Dist. LEXIS 22691 at *6. Failure to do so results in all material facts set forth in the movant's statement being deemed admitted. Local Rule 56.1(b)(3)(B); *Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 810 (7th Cir. 2005); *Duncan*, 2003 U.S. Dist. LEXIS 14134 at *3 (N.D. Ill.); *Wilcox*, 2002 U.S. Dist. LEXIS 22691 at *6. The Seventh Circuit has "endorsed the exacting obligation[s] these [local] rules impose on a party contesting summary judgment" and has "repeatedly upheld their strict enforcement . . . , sustaining the entry of summary judgment when the non-movant has failed to submit a factual statement in the form called for by the pertinent [local] rule and thereby conceded the movant's version of the facts." *Wilcox*, 2002 U.S. Dist. LEXIS 22691 at *6; *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994).

In this case, Plaintiff has failed to respond adequately to Defendants' summary judgment motion. In their motion, Defendants provided a statement of undisputed facts in accordance with Local

Rule 56.1(a)(3). Plaintiff failed to include a response to this statement. Although Plaintiff's response did include a "Statement of Facts" laying out Plaintiff's version of the facts and including some references to the factual record, Plaintiff made no attempt, as required by Local Rule 56.1(b)(3), to respond to each paragraph of Defendants' Rule 56.1 statement of undisputed facts. As such, this Court has no choice but to deem the facts set forth by the Defendants as undisputed. As the Seventh Circuit has stated, to do otherwise would obligate the district courts to "scour the record looking for fact disputes," a task which is inconsistent with our adversary system of justice. *Wilcox*, 2002 U.S. Dist. LEXIS 22691 at *6; *Waldridge*, 24 F.2d at 922. This court will not scour the record on the behalf of the Plaintiff. Thus, this court's task becomes merely to determine whether, "given the undisputed facts, summary judgment is proper as a matter of law." *Wilcox*, 2002 U.S. Dist. LEXIS 22691 at *6; *Wienco, Inc. v. Katahn Associates, Inc.*, 965 F.2d 565, 568 (7th Cir. 1992).

## II. BACKGROUND

Plaintiff owns approximately seventy firearms, which he often transports along with large quantities of ammunition in his vehicle. (Def's 56.1 Stmt. ¶ 6.) When the vehicle is so loaded, it is weighed down nearly to the ground. (Id. at 6.) When loading the vehicle, Plaintiff makes several trips from his apartment, and people have observed him carrying firearm-shaped cases. (Id. at 8.)

- 4 -

At all relevant times, Defendants were working as investigators for the Cook County State's Attorney's Office. (Id. at 3.) On July 28, 2003, Investigator Weber received an anonymous "hotline" call indicating that the caller had observed approximately fifteen handguns and 1,000 ammunition rounds inside the car's trunk. (Id. at 13.) The caller described the individual and the vehicle and provided a license plate number. (Id.) As a result, Weber and Salgado-Valentini opened an investigation and determined the vehicle belonged to Plaintiff. (Id. at 14).

Between July 29 and October 23, 2003, Weber and Salgado-Valentini repeatedly drove by Plaintiff's residence, observing Plaintiff's vehicle twice. (Id. at 15.) Both times the truck was weighted down nearly to the ground. (Id. at 15.)

On October 23, 2003, Defendants were investigating information of illegal firearm sales near 18th Street and Ashland when Weber recognized Plaintiff's vehicle in the vicinity. (Id. at 17.) The vehicle's trunk was only two or three inches off the ground. (Id. at 18.) Defendants conducted a traffic stop of Plaintiff's vehicle because Plaintiff was not wearing his seatbelt as required by law. (Id. at 19.) At this time, Defendants were unaware of Plaintiff's felony conviction. (Id. at 33.)

When Weber approached Plaintiff's vehicle, he observed several boxes of firearm ammunition in the rear seat. (Id. at 20-21.) During the resulting conversation, Plaintiff told Weber that there was more ammunition in the trunk and gave Weber the keys to the trunk

without being asked. (Id. at 22.) Then, Plaintiff and Weber walked to the rear of the vehicle where Weber opened the truck. (Id. at 23-24.) Inside were an indeterminate number of firearms. (Id. at 24.) Due to the number of firearms present and the busy street, the investigators decided to verify the legality of the firearms in another location. (Id. at 25.)

At this time, Defendants arrested Plaintiff for Unlawful Use of a Weapon and transported Plaintiff and his vehicle to the 12th District Chicago Police Department (the "CPD"). (Id. at 26.) Fifty-one firearms, twelve boxes of ammunition, and two sacks of ammunition were recovered from Plaintiff's vehicle. (Id. at 32). There was not, however, sufficient space at this facility to inspect all of the recovered firearms and ammunition, so Plaintiff and the vehicle were transported to the Homan Square facility. (Id. at 27.) At this time, Defendants turned over the investigation to CPD officers. (Id. at 29.) While being interviewed by CPD officers, Plaintiff voluntarily signed a consent to search his residence. (Id. at 30.) CPD officers then searched Plaintiff's residence; Defendants assisted by carrying firearms and ammunition from the residence. (Id. at 31.) This property was inventoried at the Homan Square facility. (Id. at 31-32.)

All investigation into the registration of the firearms and Plaintiff's background was conducted by CPD officers. (Id. at 36.) Defendants were uninvolved in the decision to charge Plaintiff with Unlawful Use of a Weapon by a Felon. (Id. at 37.) After being told

that he was being charged with Unlawful Use of a Weapon by a Felon, Plaintiff first mentioned his Governor's pardon to CPD officers. (Id. at 35.) The charges against Plaintiff were dismissed on January 6, 2004. (Id. at 38.)

### III. DISCUSSION

#### A. Plaintiff's New Allegations

As a preliminary matter, this court must address Plaintiff's apparently new allegations. A plaintiff may not amend his complaint by argument in a brief in opposition to a motion for summary judgment. *Griffen v. Potter*, 356 F.3d 824, 830 (7th Cir. 2004). Although Plaintiff's complaint referred to an "intercepted" anonymous phone conversation indicating that the Plaintiff had firearms and ammunition, the complaint does not allege that this interception violated Plaintiff's Fourth Amendment rights or even assert that the interception was of Plaintiff's conversation. The first time that Plaintiff asserts that this "interception" was a wiretap or was of his conversation is in the Statement of Facts contained within his response to Defendants' motion for summary judgment. Plaintiff also challenges the voluntariness of his consent to the search of his residence for the first time in his response to Defendants' motion to dismiss. As such, this court disregards these allegations.

#### B. Plaintiff's Alleged Fourth Amendment Violations

Plaintiff alleges that his Fourth Amendment constitutional rights were violated by the traffic stop, the search of his vehicle, (both at the scene of the stop and later at the Homan District Police

Station), Plaintiff's arrest, and the search of Plaintiff's residence. The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Whren v. U.S.*, 517 U.S. 806, 809 (1996).

### 1. *The Traffic Stop*

The detention of a person and his vehicle pursuant to a traffic stop, even for a short time, constitutes a seizure for the purposes of the Fourth Amendment. *Id.* at 809-810. As such, a traffic stop must not be "unreasonable" and thus must be supported by probable cause to believe that a traffic violation has occurred. *Id.* at 810. Defendants in this case personally observed Plaintiff driving without wearing his seatbelt as required by Illinois law; Plaintiff does not dispute this fact. As such, the stop was valid. Because the stop itself was valid, the plain view doctrine applies to the ammunition Weber observed in the back seat. *See, Horton v. California*, 496 U.S. 128, 136-37 (1990).

Plaintiff argues that the stop was pretextual and that Defendants' true motivation in making the traffic stop was to investigate Plaintiff regarding possible firearm violations. However, the Supreme Court held in *Whren* that as long as a traffic stop is supported by probable cause, the subjective motivations of the officers involved is irrelevant. *Id.* at 813. Whether it is customary (or not) to make such a stop is likewise irrelevant. *Id.*

## 2. The Search of Plaintiff's Trunk

The Fourth Amendment usually requires police to obtain a warrant before conducting a search. *Maryland v. Dyson*, 527 U.S. 465, 466 (1996). Where probable cause exists to search a vehicle on a public road, however, a warrant need not be obtained. *U.S. v. Ross*, 456 U.S. 798, 806-07 (1982). Although this exception to the traditional rule requiring a warrant for a valid search is grounded in the movable nature of a vehicle, there is no separate "exigency" requirement for searches of a vehicle. *Dyson*, 527 U.S. at 466-67. If the facts and circumstances within the officers' knowledge based on reasonably trustworthy information are sufficient to warrant a prudent person to believe that the suspect has committed a crime, then probable cause exists. *Askew v. City of Chicago*, 2005 WL 1027092 at * 11 (N.D. Ill. 2005).

In this case, the Defendants had probable cause to search the trunk of Plaintiff's car. Defendants had received an anonymous tip indicating that Plaintiff frequently carried firearms and ammunition in his vehicle, Plaintiff's vehicle was weighted nearly down to the ground (corroborating that tip), Plaintiff's vehicle was being driven in a vicinity under investigation for illegal firearm sales, and Weber had observed a large amount of ammunition in the back seat of Plaintiff's vehicle during the lawful traffic stop. Courts have held that ammunition in plain view in a vehicle creates a reasonable indication of the presence of firearms in the vehicle. *People v. Stack*, 613 N.E.2d 366, 369 (Ill. App. Ct. 1993). Although all of

Plaintiff's firearms turned out to be legally possessed and registered, a prudent person could reasonably have believed that there were firearms in the trunk of the car, and that some of them were not properly registered due to the Plaintiff's proximity to a locality under investigation for illegal firearms sales. Thus, the search was reasonable and did not violate Plaintiff's Fourth Amendment rights.

Additionally, a search is not unreasonable under the Fourth Amendment if voluntary consent to search is obtained. *U.S. v. Drayton*, 536 U.S. 194, 206 (2002). In *U.S. v. Mancillas*, 183 F.3d 682, 701 n. 22 (7th Cir. 1999)( the Seventh Circuit noted with approval a district court's decision that a search of a trunk with the owner's keys was permissible where the officer had specifically asked for the keys. Here, Plaintiff gave Weber the keys without being asked and accompanied Weber as he walked to the back of the vehicle and used them to open to the trunk. Thus, the search of the Plaintiff's trunk was valid.

Plaintiff argues, however, that even if the initial search of Plaintiff's trunk on Cermak Road did not violate the Fourth Amendment, the subsequent search of the trunk at the Homan District Station did. Plaintiff is correct that a search and seizure at the Homan Station was too remote in time and place to still be incidental to Plaintiff's arrest. *Preston v. United States*, 376 U.S. 364, 367-68 (1968). However, if it is impracticable to search a vehicle where it has initially been stopped, the vehicle may be moved to a police

station and searched there without a warrant if the initial search was supported by probable cause. *See Chambers v. Maroney*, 399 U.S. 42, 52 (1970). Such searches have been upheld even where the vehicle's owner has been arrested and thus the vehicle is no longer in danger of being removed from the jurisdiction. *See id.* Over fifty firearms and a great deal of ammunition were eventually recovered from inside Plaintiff's trunk and Cermak Road is a busy Chicago street. A careful examination of the registration and serial numbers of each firearm would have proved impracticable under the circumstances and might have proven dangerous to the Defendants. *See, Chambers*, 399 U.S. at 52 n. 10. As such, movement of the vehicle to the Homan Station, and a subsequent warrantless search there, did not violate Plaintiff's Fourth Amendment rights.

### 3. *Plaintiff's Arrest*

The arrest of a person is a seizure within the meaning of the Fourth Amendment, and requires probable cause that the person has committed a crime. *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964). Defendants admit that Plaintiff was placed under arrest after Defendants observed the many firearms in Plaintiff's truck. Although Plaintiff's argument is not clear, it appears that Plaintiff means to argue that Defendants lacked probable cause to arrest Plaintiff.

Regardless of whether Defendants had actual probable cause to arrest Plaintiff, Defendants are entitled to summary judgment on this claim if they are entitled to qualified immunity from suit. Government officials are protected from civil liability when

performing discretionary functions where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Driebel v. City of Milwaukee*, 298 F.3d 622 (7th Cir. 2002). Even if probable cause did not actually exist, if a reasonable officer, given the facts and circumstances known to the officers at the time, could have believed that probable cause existed to arrest Plaintiff, then the Defendants are entitled to qualified immunity. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). Qualified immunity exists to shield officers from civil liability by not requiring officials to "err always on the side of caution" due to a fear of civil suit. *Hunter*, 502 U.S. at 229. Given that Plaintiff's vehicle contained a large amount of firearms and ammunition and had been stopped in a locality being investigated for illegal firearm sales, a reasonable officer could have concluded that at least some of the firearms in the trunk were not properly registered and/or had defaced identification marks in violation of Illinois law.

Additionally, the Seventh Circuit has held that "probable cause need not have existed for the charge for which the plaintiff was arrested, so long as probable cause existed for arrest on a closely related charge." *Biddle v. Martin*, 992 F.2d 673, 676 (7th Cir. 1993). Probable cause to arrest must be based on the "same set of facts that gave rise to the arrest" and the charge must be one that would have recommended itself to a reasonable police officer acting in good faith at the time of the arrest. *Ochana v. Flores*, 199 F.

Supp.2d 817, 826 (N.D. Ill. 2002). Although Defendants admit that they arrested Plaintiff for Unlawful Use of a Weapon, as long as probable cause existed for a "closely related" charge, Defendants are still entitled to qualified immunity. In *Biddle*, the Seventh Circuit found disorderly conduct and "allowing another to operate his vehicle in a manner contrary to law" to be "closely related" to the offense charged, obstruction of a police officer, because all three could reasonably have been based on the same set of facts. *See Ochana*, 199 F. Supp. 2d at 826. Probable cause to arrest Plaintiff on offenses related to the proper registration of firearms and defacement of identification marks could have been based on the facts before Defendants and suspicion of such offenses would have occurred to a reasonable officer. As such, these offenses are sufficiently "closely related" to Unlawful Use of a Weapon. Thus, Plaintiff's argument that the firearms in his trunk were being properly transported under 720 Ill. Comp. Stat. 24-1(a)(4) because they were "not immediately accessible" and were "unloaded and enclosed in a case" is not dispositive.

Once probable cause has been established, furthermore, officers have "no constitutional obligation to conduct further investigation in the hopes of uncovering potentially exculpatory evidence." *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999)(quoting *Eversole v. Steele*, 59 F.3d 710, 718 (7th Cir. 1995)). As such, Defendants had no obligation to conduct a thorough search of the firearms on the spot to determine conclusively that all were properly

registered, especially considering that doing so might have proven dangerous on a busy Chicago street. Because arguable probable cause exists, summary judgment is proper in Defendants' favor.

### IV. CONCLUSION

For the reasons stated herein, the Defendants' Motion for Summary Judgment is granted.


**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　　　　　　　　United States District Court

Dated: September 25, 2006